T.C. Memo. 1997-542


UNITED STATES TAX COURT


CHERYL DENESE BREWER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8612-96.                          Filed December 9, 1997.


Cheryl Denese Brewer, pro se.

Jason M. Silver, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, Judge:  Respondent determined a $47,047 deficiency in petitioner's 1992 Federal income tax.

The issues for decision are: (1) Whether petitioner is entitled to exclude from gross income amounts received in settlement of a class action suit pursuant to section 104(a)(2),

and (2) whether petitioner is entitled to exclude from gross income amounts paid as legal fees.

Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Cheryl Denese Brewer (petitioner) resided in Los Angeles, California, at the time she filed her petition. At all relevant times, petitioner was an insurance agent.

On June 1, 1979, a class action lawsuit, Kraszewski v. State Farm Gen. Ins. Co., was filed against State Farm General Insurance Co., State Farm Mutual Automobile Insurance Co., State Farm Life Insurance Co., and State Farm Fire and Casualty Co. (State Farm) in the U.S. District Court for the Northern District of California.[1] The class representatives alleged that State Farm had engaged in statewide discrimination in California in the recruiting, hiring, and training of women for sales agent trainee positions in

---

[1] On Sept. 9, 1981, the District Court for the Northern District of California certified a class in Kraszewski to maintain the action. See Kraszewski v. State Farm Gen. Ins. Co., 27 Fair Empl. Prac. Cas. (BNA) 27 (N.D. Cal. 1981).

violation of title VII of the Civil Rights Act of 1964, Pub. L. 88-352, sec. 701, 78 Stat. 241, 42 U.S.C. sec. 2000e to 2000e-17 (title VII).  The representatives sought backpay, as well as injunctive and declaratory relief.

On November 6, 1981, the District Court bifurcated the litigation into a liability and a remedy phase.  On April 29, 1985, the court ruled in the liability phase that State Farm was liable under title VII for classwide discrimination on the basis of gender.  See Kraszewski v. State Farm Gen. Ins. Co., 38 Fair Empl. Prac. Cas. (BNA) 197 (N.D. Cal. 1985).  The court concluded that women who attempted to become trainee agents were "lied to, misinformed, and discouraged in their efforts to attain the entry level sales position."  Id. at 257.  The court then ruled that the class action suit properly included "all female applicants and deterred applicants who, at any time since July 5, 1974, have been, are, or will be denied recruitment, selection and/or hire as trainee agents by defendant companies within the State of California."  Id. at 258.

On July 17, 1986, the court held that individual hearings were appropriate to determine the relief for class members.  The court decided that class members were entitled to show that they were actual victims of discrimination as to any of the vacancies at State Farm that occurred during the period of liability and were filled by men.

On June 17, 1979, petitioner sought employment as a State Farm trainee agent but was not hired. She subsequently became aware of the class action suit against State Farm and became a plaintiff in the suit. On February 6, 1992, petitioner and State Farm entered into a "Settlement Agreement and General Release" (settlement agreement), which provided in relevant part:

> 1. For and in consideration of the sum of $186,677.00, and potential additional payments of up to $18,000.00 as provided in Paragraph 13 below, * * * less all required payroll deductions applicable to the period of Trainee Agency, if any, and inclusive of attorneys's [sic] fees and costs to which * * * [petitioner] Cheryl Denese Brewer or Claimant's Counsel is entitled on a prevailing party basis but excluding attorneys' fees and costs as set forth in Paragraph 4 below, Cheryl Denese Brewer * * * does hereby completely release and forever discharge * * * [State Farm] * * * from any claim * * * or liability of any and every kind based on any federal, state, or local law, statute, or regulation, excepting only claims for worker's compensation benefits, (hereinafter "Claim") which arose prior to the execution of this Settlement Agreement and General Release, and which was raised, or could have been raised in the above-captioned case, as well as any and all Claims (including, where applicable, claims under the federal Age Discrimination in Employment Act) arising out of or relating to any alleged discriminatory, improper, or unlawful act or omission of State Farm in connection with any term or condition of employment or independent contractor status or the process of securing or attempting to secure employee or independent contractor status including, without limitation, recruitment, selection, hiring, job assignment, job transfer, training, promotion, or termination, which arose prior to the execution of this Settlement Agreement and General Release.

    *    *    *    *    *    *    *

3.    * * * [Petitioner] hereby agrees and promises * * * (3) that by entering into this Settlement Agreement and General Release, she is waiving any and all right[s] she may have under the terms of the Consent Decree respecting instatement or rights to any other future class relief * * *

    *    *    *    *    *    *    *

5.    It is understood and agreed that this is a full and final General Release applying not only to all Claims which are presently known, anticipated or disclosed to * * * [petitioner], but also to all Claims which are presently unknown, unanticipated, and undisclosed to * * * [petitioner] and which may have arisen prior to the date of execution of this Settlement Agreement and General Release. * * * [Petitioner] hereby waives any and all rights or benefits which she may now have, or may in the future have, under the terms of Section 1542 of the California Civil Code, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

    *    *    *    *    *    *    *

7.    It is understood and agreed that this compromise settlement includes the compromise settlement of any and all legal, evidentiary, discovery, and document production issues regarding Claim No. 554 * * *. The parties further agree and understand that neither State Farm nor * * * [petitioner] will bring any motions, either individually or as part of the class, relative to such Claim No. 554 issues * * *

* * * * * * *

13. * * * The approximate full value of * * * [petitioner's] claim under the Consent Decree damage formula as of February 1, 1992, is $499,912.00, which represents back pay as a State Farm agent accrued from the year of the challenged appointment to February 1, 1992, plus six months of front pay from that date forward.

b. Settlement Cash at 87.5% Acceptance Rate: State Farm offers * * * [petitioner] Settlement Cash of $186,677.00, which is approximately 37% of the estimated full Consent Decree value of her claim, to release her claims against State Farm. * * *

* * * * * * *

c. Incentive Cash for Acceptance Rate Above 90%: The Incentive Cash will be $1,800.00 per claimant for each full percentage point by which the Acceptance Rate * * * exceeds 90%. * * *

* * * * * * *

e. Attorney's Fees: The payments State Farm is offering to * * * [petitioner] include her attorneys' fees and costs * * *. That is, * * * [petitioner] will have to pay her attorneys' fees * * * out of the payment State Farm makes to her. * * *

In 1992, pursuant to the terms of the settlement, State Farm issued petitioner and her attorney a check in the amount of $202,877. Petitioner's attorney retained legal fees of $40,620.

Petitioner did not report the State Farm payment on her 1992 Federal income tax return. Respondent determined in the notice of deficiency that the entire State Farm payment should have been included in petitioner's gross income and that petitioner is

entitled to claim legal fees in the amount of $40,620 as a miscellaneous itemized deduction.

OPINION

Issue 1.  Excludability of Settlement Proceeds

The first issue for decision is whether petitioner is entitled to exclude from gross income, pursuant to section 104(a)(2), amounts received in settlement of a class action suit.  Petitioner contends that she is so entitled.  Respondent disagrees.

Except as otherwise provided, gross income includes income from all sources.  Sec. 61; Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-430 (1955).  Although section 61(a) is to be broadly construed, statutory exclusions from income must be narrowly construed.  Commissioner v. Schleier, 515 U.S. 323, 327-328 (1995).

Pursuant to section 104(a)(2), gross income does not include "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness".  The regulations provide that "The term 'damages received (whether by suit or agreement)' means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution."  Sec. 1.104-1(c), Income Tax Regs.  Thus, in order to exclude damages from gross income pursuant to section 104(a)(2), the taxpayer must prove that: (1) The underlying cause of action is based upon tort or tort type

rights, and (2) the damages were received on account of personal injuries or sickness.  <u>Commissioner v. Schleier</u>, <u>supra</u> at 336-337.

Where amounts are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for settlement controls whether such amounts are excludable from gross income under section 104(a)(2).  <u>United States v. Burke</u>, 504 U.S. 229, 237 (1992).  The crucial question is "in lieu of what was the settlement amount paid?"  <u>Bagley v. Commissioner</u>, 105 T.C. 396, 406 (1995), affd. 121 F.3d 393 (8th Cir. 1997). Determining the nature of the claim is a factual inquiry.  <u>Robinson v. Commissioner</u>, 102 T.C. 116, 127 (1994), affd. in part, revd. in part, and remanded 70 F.3d 34 (5th Cir. 1995).

The amounts petitioner received pursuant to the settlement agreement were intended to settle her claim under title VII. Although petitioner did not file an individual complaint in that case, and the settlement agreement does not contain a specific reference to title VII, it is clear that title VII is the basis for the underlying claim.  The nature of petitioner's claim is identical to that stated in the complaint filed by the <u>Kraszewski</u> class representatives, which alleged that State Farm had engaged in statewide discrimination in the recruiting, hiring, and training of women for sales agent trainee positions in violation of title VII. The plaintiffs sought backpay and injunctive and declaratory relief. The District Court held that State Farm was liable under title VII

to all members of the class who had been discriminated against and ordered individual hearings.[2] Kraszewski v. State Farm Gen. Ins. Co., 38 Fair Empl. Prac. Cas. (BNA) 197 (N.D. Cal. 1985). The court did not limit relief to State Farm employees.

The U.S. Supreme Court's decision in United States v. Burke, supra, controls. The issue in Burke was whether amounts received in settlement of a title VII claim were excludable pursuant to section 104(a)(2). The Court analyzed title VII and held that it did not provide for remedies to recompense claimants for tort type personal injuries. Rather, the Court noted that the statute offered only injunctions, back and front pay, and other equitable relief. Id. at 238-239. Accordingly, the Court held that title VII did not redress a tort type personal injury and consequently that settlement proceeds based on such a claim are not excludable pursuant to section 104(a)(2).

Here, petitioner and State Farm entered into a settlement agreement pursuant to which State Farm paid $202,877 to petitioner for her release of a claim "arising out of or relating to any alleged discriminatory, improper, or unlawful act or omission of State Farm in connection with * * * recruitment, selection, hiring, job assignment, job transfer, training, promotion, or termination". In addition, the settlement agreement specifically stated that it

---

[2] Although petitioner did not have a hearing to determine whether she was entitled to damages, petitioner and State Farm nevertheless entered into a settlement.

includes "the compromise settlement of any and all legal, evidentiary, discovery, and document production issues regarding Claim No. 554."[3] Thus, the entire award petitioner received in settlement of her title VII claim against State Farm represented a compromise and settlement of petitioner's rights pursuant to her claim against State Farm alleging discrimination under title VII.[4]

In sum, no portion of petitioner's settlement award was attributable to a claim based upon tort or tort type rights. Thus, we hold that petitioner improperly excluded the settlement proceeds ($202,877) from her 1992 gross income. Commissioner v. Schleier, supra at 337; United States v. Burke, supra at 242. Accordingly, we sustain respondent's determination.

We note that our opinion herein is consistent with prior decisions of this Court, which also held that settlement proceeds received pursuant to the Kraszewski litigation were not excludable from gross income pursuant to section 104(a)(2). See Gillette v. Commissioner, T.C. Memo. 1997-301; Hayes v. Commissioner, T.C. Memo. 1997-213; Hardin v. Commissioner, T.C. Memo. 1997-202; Raney v. Commissioner, T.C. Memo. 1997-200; Clark v. Commissioner, T.C. Memo.

---

[3] Claim No. 554 was the identification of petitioner's claim against State Farm in the class action suit.

[4] As petitioner's claim arose in 1979 and the class action suit was filed in that year, the amendments to title VII made by sec. 102 of the Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1072-1074, do not apply. Landgraf v. USI Film Prods., 511 U.S. 244 (1994).

1997-156; <u>Berst v. Commissioner</u>, T.C. Memo. 1997-137; <u>Martinez v. Commissioner</u>, T.C. Memo. 1997-126; <u>Fredrickson v. Commissioner</u>, T.C. Memo. 1997-125.

<u>Issue 2. Excludability of Legal Fees</u>

The second issue is whether petitioner is entitled to exclude from gross income amounts paid as legal fees. Petitioner argues that because her legal fees were paid to counsel from the settlement proceeds and petitioner never received such fees, petitioner is entitled to exclude the legal fees from her 1992 income. Respondent contends that petitioner may deduct attorney's fees of $40,620 as a miscellaneous itemized deduction to the extent they exceed 2 percent of petitioner's adjusted gross income.

Although State Farm issued a check jointly to petitioner and her attorney, petitioner was responsible for her legal costs. The settlement agreement provided, inter alia, that the State Farm payment included petitioner's attorney's fees and that it was petitioner's responsibility to pay her attorney's fees.

Thus, we agree with respondent that the attorney's fees are includable in petitioner's gross income and deductible as a miscellaneous itemized deduction. See <u>Alexander v. Commissioner</u>, 72 F.3d 938, 946 (1st Cir. 1995), affg. T.C. Memo. 1995-51.

We have considered all of petitioner's other arguments and found them to be either irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.